# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| KENNETH JAMES, | ) | |
|---|---|---|
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 3:17-cv-01153 |
| v. | ) | Judge Trauger |
| | ) | Magistrate Judge Brown |
| | ) | |
| TAVERN, | ) | |
| | ) | |
| **Defendant.** | ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are Defendant's motion for summary judgment (Docket Entry No. 27), motion to strike (Docket Entry No. 40), and motion to stay response (Docket Entry No. 42). For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendant's motion to strike and motion for summary judgment be **GRANTED,** that Defendant's motion to stay be denied as moot, and that this action be **DISMISSED WITH PREJUDICE.**

## I. INTRODUCTION

Plaintiff, Kenneth James, filed this *pro se* action against Defendant, Tavern, asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, for retaliation; Title VII, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") for race and sex discrimination; the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, for retaliation; and a state law claim for defamation. (Docket Entry No. 1). On August 24, 2017, the Court granted leave to Plaintiff to file the complaint *in forma pauperis*, pursuant to 28 U.S.C. 1915(a). (Docket Entry No. 3). After conducting an initial review of the Complaint, the Court dismissed Plaintiff's retaliation claim under the FMLA and his discrimination claims under Title VII, but concluded that

Plaintiff's complaint stated claims for retaliation under the ADA and defamation under state law. *Id.* at 3-5. The Court directed the Clerk to issue process to Defendant, and the action was referred to the Magistrate Judge for entering a scheduling order for the management of the case and for disposition of pre-trial, non-dispositive motions and for a report and recommendation on all dispositive motions. *Id.* at 5.

Defendant filed a motion to dismiss. (Docket Entry No. 5). The Magistrate Judge entered a Report and Recommendation ("R&R"), recommending that Defendant's motion to dismiss be granted with respect to Plaintiff's defamation claim, but denied as to Plaintiff's ADA retaliation claim. (Docket Entry No. 15). The District Judge adopted the Magistrate Judge's R&R, and Plaintiff's defamation claim was dismissed. (Docket Entry No. 20).

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 27), contending that Plaintiff did not engage in protected activity because he did not request a reasonable accommodation; that Plaintiff fails to show a casual connection between the alleged protected activity and the adverse action; and that Plaintiff was terminated because of sexual harassment and his refusal to cooperate with an internal investigation, which was required by the Employee Handbook.

## II. MOTION TO STRIKE

Defendant asserts that Plaintiff's purported "statement of undisputed material facts in support of its motion for summary judgment" (Docket Entry No. 38), and "memorandum of law in support of its motion for summary judgment" (Docket Entry No. 39), should be stricken as being untimely. (Docket Entry No. 40).

2

The dispositive motion deadline was August 16, 2019. (Docket Entry Nos. 24 and 26, at 2). On September 4, 2019, the Magistrate Judge conducted a case management conference regarding discovery issues. (Docket Entry No. 35). Given the delay over discovery, the Magistrate Judge extended Plaintiff's time to respond to Defendant's motion for summary judgment until October 2, 2019. *Id*. at 2. The Magistrate Judge instructed Plaintiff to consider the requirements for a response set forth in the scheduling Order (Docket Entry No. 21) and to read Fed. R. Civ. P. 56 and Local Rule 56. *Id.* The Magistrate Judge's scheduling Order instructed the following: "Plaintiff must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence. Plaintiff should read and comply with Federal Rule of Civil Procedure 56 and Local Rule LR 56.01(a)." (Docket Entry No. 21, at 4). On September 26, 2019, Plaintiff filed what purports to be a dispositive motion entitled, "statement of undisputed material facts in support of its motion for summary judgment" (Docket Entry No. 38), and "memorandum of law in support of its motion for summary judgment" (Docket Entry No. 39).

"[T]he lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). "Where, for example, a *pro se* litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim*, 92 F.3d at 416; *Jourdan*, 951 F.2d at 110 (the relaxed pleading standards for *pro se* litigants do not apply to "readily comprehended court deadlines").

3

Here, Plaintiff failed to follow Court Orders (Docket Entry Nos. 24 and 26) regarding the dispositive motion deadline, and, therefore, Plaintiff's purported motion for summary judgment is untimely and should be stricken. Further, Plaintiff failed to comply with the Court's Local Rules in filing his purported motion for summary judgment. Local Rule 56.01(b) provides, in part, as follows:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed.R.Civ.P. 56 must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact must be set forth in a separate, numbered paragraph. Each fact must be supported by specific citation to the record. After each paragraph, the word "response" must be inserted and a blank space provided that is reasonably calculated to allow the non-moving party sufficient space to respond to the assertion that the fact is undisputed. . . . The requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties. . . .

Local Rule 56.01 (b).

"[F]ederal courts 'have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'" *Branham v. Micro Comput. Analysts*, 350 F. App'x 35, 38 (6th Cir. 2009) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "'[I]t is incumbent on litigants, even those proceeding *pro se*, to follow the ... rules of procedure,'" including "local and state court rules." *Fields v. Cty. of Lapeer*, 238 F.3d 420, No. 99-2191, 2000 WL 17, at *2 (6th Cir. 2000) (quoting *Bradenburg v. Beaman*, 632 F.2d 120, 122 (10th Cir.1980)); *Jawara v. Suntrust Bank*, No. 3:15-CV-00305, 2016 WL 2770657, at *1 (M.D. Tenn. May 12, 2016) ("Even a *pro se* plaintiff must comply with federal local rules of procedure." (collecting cases)).

Here, in addition to filing his purported motion for summary judgment after the dispositive motion deadline, Plaintiff's purported "statement of undisputed material facts" fails to comport with

4

Local Rule 56.01(b), as the filing does not contain a specific statement of undisputed facts with references to where those facts may be found in the record. *Plemons v. Washburn*, No. 3:18-CV-00845, 2019 WL 6315527, at *2 (M.D. Tenn. July 16, 2019), *report and recommendation adopted*, No. 3:18-CV-00845, 2019 WL 6273315 (M.D. Tenn. Nov. 25, 2019) (denying plaintiff's motion for summary judgment because it failed to comply with Federal Rule of Civil Procedure 56 and Local Rule 56.01). The Magistrate Judge specifically instructed Plaintiff to read Fed. R. Civ. P. 56 and Local Rule 56.

Accordingly, for this additional reason, the Magistrate Judge finds Defendant's motion to strike to be well taken and should be granted. No matter the title, Plaintiff's filings do not constitute a properly field motion for summary judgment. However, the Magistrate Judge will construe Plaintiff's "statement of undisputed material facts in support of its motion for summary judgment" (Docket Entry No. 38), and "memorandum of law in support of its motion for summary judgment" (Docket Entry No. 39) as his response to Defendant's motion for summary judgment.

### III. SUMMARY OF PERTINENT FACTS[1]

---

[1] Defendant filed contemporaneously with its motion for summary judgment a statement of undisputed facts (Docket Entry No. 29), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendant's statement of undisputed facts. Accordingly, Defendant's proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(f). Further, Plaintiff has not established any dispute of fact as his response is not supported by any sworn statements, and his unsupported factual assertions cannot be considered as evidence. Fed. R. Civ. P. 56(e); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158, n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010); *Raybon-Tate v. Schofield*, No. 3:15-CV-00322, 2018 WL 998326, at *5-6 (M.D. Tenn. Feb. 21, 2018). The Magistrate Judge specifically advised Plaintiff that he "must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence." (Docket Entry No. 21, at 4). Moreover, although Plaintiff states, "Plaintiffs [sic] move for summary judgment on all counts in their [sic] verified amended complaint," (Docket Entry No. 39, at 1), Plaintiff's complaint is, in fact, unverified, as Plaintiff does not state that he is affirming the allegations under penalty of perjury pursuant to 28 U.S.C. § 1746. *Myers v. Transcor Am.*, LLC, No. 3:08-295, 2010 WL 3824083, at *9 (M.D. Tenn. Sept. 30, 2010); *Jackson*

5

Defendant, Tavern, hired Plaintiff, Kenneth James, as a "prep cook" on April 14, 2017. (Docket Entry No. 29, Defendant's Statement of Undisputed Facts, at ¶ 1). Plaintiff reviewed and signed Defendant's Employee Handbook on April 14, 2017. *Id*. at ¶ 3. The Employee Handbook contains a harassment policy that prohibits discrimination and harassment in the workplace, including sexual harassment. *Id*. at ¶ 4. The Employee Handbook provides that appropriate disciplinary action will be taken against any employee who violates Defendant's anti-discrimination/harassment policy and that "[b]ased upon the seriousness of the offense, disciplinary action may include verbal or written reprimand, suspension, or termination of employment." *Id*. at ¶ 7. The Employee Handbook further lists refusal or failure to cooperate with or participate in a company investigation as behaviors that are prohibited and could result in corrective action, including termination. *Id*. at ¶ 8. The Employee Handbook also advises that "[r]easonable accommodations are available to a team member with a disability if the disability affects the performance of job functions," and instructs that "[i]f you feel you need an accommodation, please speak to your manager or human resources." *Id*. at ¶ 10.

Additionally, the Employee Handbook outlines how an employee should handle emergencies at work. *Id*. at ¶ 11. Under the section titled "Tardiness and Absence," the Employee Handbook specifically states, "If you have an emergency that requires your absence from work, call and inform a manager at the earliest time possible. Any team member who misses work due to an illness must

---

*v. Heyns*, No. 1:13-CV-636, 2015 WL 5691168, at *5 (W.D. Mich. Sept. 28, 2015). Thus, Plaintiff cannot cite to the allegations in his complaint to create a genuine issue of material fact. *Woodard v. Winters*, No. 2:16-cv-704, 2018 WL 3020336, at *5 n.2 (S.D. Ohio June 18, 2018) (plaintiff's unverified complaint could not be used to support his motion for summary judgment); *McClure*, 2019 WL 858679, at *1 n.1.

call four hours in advance of their shift, and submission of a doctor's note is required when returning to work." *Id*. at ¶ 12.

During the first week of May 2017, about two to three weeks into his employment with Defendant, Plaintiff developed an ulcer on his foot. *Id*. at ¶ 13. Plaintiff testified that he had never had ulcers on his feet until his employment with Defendant. (Docket Entry No. 29-1, at p. 30).[2] About a week later, Plaintiff advised his manager, Jay Flatley, about the ulcer on his foot. (Docket Entry No. 29, at ¶ 14; Docket Entry No. 29-1, at p. 31). Plaintiff did not produce any medical documentation that advised that he could not work because he had an ulcer. *Id*. at ¶ 15. Plaintiff did not ask Flatley for any time off because of the ulcer on his foot. *Id*. at ¶ 16. During the third week of May 2017, Plaintiff went to the hospital to get a doctor to examine the ulcer on his foot. *Id*. at ¶ 17. Plaintiff's doctor opined that Plaintiff could continue to work and "packed" his foot. *Id*. at ¶ 18. Plaintiff testified that he was given antibiotics for his foot and was advised to keep his foot wrapped and packed and that he could continue to work. (Docket Entry No. 29-1, at p. 34). Plaintiff told Flatley that he needed to pack his foot as needed, and Flatley said that was okay. (Docket Entry No. 29, at ¶ 19).

After his visit to his physician, Plaintiff continued to work 8 hours a day and 40 hours per week. *Id*. at ¶ 20. Plaintiff never asked Flatley or anyone with Defendant to adjust his schedule because of the ulcer on his foot. *Id*. at ¶ 21. Plaintiff testified that he would have requested an adjusted schedule if the doctors had said that he could not work, but because the doctors told him

---

[2]The citations to Plaintiff's deposition include references to the actual page number(s) of the transcript that are denoted with a "p.", rather than the page numbers generated by the Court's electronic filing format.

that he could work, Plaintiff continued to work his regular schedule. *Id*. at ¶ 22; Docket Entry No. 29-1, at pp. 37, 40-41.

On June 8, 2017, Plaintiff reported to work at 6:30 a.m. and left to go to the hospital without telling Flatley, his supervisor, where he was going. *Id*. at ¶ 23. Plaintiff contacted Flatley at 8:30 a.m. via text message to tell him that he would not report to work that day. *Id*. at ¶ 24. Flatley responded, telling Plaintiff that if he came back to work, he had a job. *Id*. at ¶ 25. The text messages read as follows:

**Thursday, June 8, 2017**

Plaintiff: Can't make it today these doctors say my feet is worser I missed 2 appointments scared u gonna fire me now my feet fucked up Jay please don't call me I'll bring you a medical excuss

Flatley: Yeah, it's real convenient it's payday, you walked in looked at the prep list and left. You come back to work and you still have a job.

You're on a 90 day probation period. Not looking good

Plaintiff: Jay u do what you gotta do I've been missing appointments about my foot because u got me thinking if I call out u gonna fire me now my feet so infected if the antibiotics don't work I could loose my foot I know you don't care but I do now u saying I'm calling out cause of the prep list or cause it's PaydAy Jay please I've I'm sitting down here at Vanderbilt hospital I might have blood clots the hell with you Jay

Flatley: The hell with me? I'll take it you're quitting   The hell with me? I'll take it you're quitting  You didn't call out....you showed up and left, that's quitting

Plaintiff: I'm not quitting I didn't call cause I have no service in Vanderbilt I'm outside getting service I was worrying about my feet I couldn't move my leg a stranger drove me here I'm bringing a medical excuse to work when I return u in yo feelings cause I said hell with you

8

| | |
|---|---|
| Flatley: | Why didn't you call me when you were here at 6:30? You waited until 8:30 to let me know. You came in and left...and in this situation my feelings don't matter |
| Plaintiff: | Look Jay I was in pAin I didn't want to come in anyway but u think I don't want to work my leg locked up on me I was going to call a ambulance but a lady asked me was I ok I said no I need to get to Vanderbilt hospital and she offered to drive me when I got here they took care of me right away when I tried to call couldn't connect to Wi-Fi they said go outside you can get service so I did they said I should have been came to the emergency room days ago worrying about u firing me |
| | I'm being admitted just for tonight be back to work Saturday |

**Saturday, June 11, 2017**

| | |
|---|---|
| Plaintiff: | Am I working tomorrow  Do I still have my job |
| Flatley: | Yep and yep |
| Plaintiff: | Ok thanks |

(Docket Entry No. 29-1, 90-91; Docket Entry No. 1, at 11-12).

On June 11, 2017, Flatley offered to schedule Plaintiff to work one day a week, but Plaintiff refused, telling Flatley that he could work because the doctors had approved him to work. (Docket Entry No. 29, at ¶ 26). The June 11, 2017, text messages between Flatley and Plaintiff read as follows:

| | |
|---|---|
| Flatley: | Because of this situation, and I do not want to be responsible for any more pain or damage to your foot, I put you on the schedule for one day a week, Tuesday at 7am. When your foot is 100% better we can reevaluate |
| Plaintiff: | No that's not going to work for me I ask the doctor is it ok for me to work and they said yes I'm fine |
| Flatley: | Your choice |
| Plaintiff: | My choice what work 40hr or 8 I'll take the 40 |

9

| | | |
|---|---|---|
| Flatley: | | 1 day until your foots better |
| Plaintiff: | | My foot is good |
| Flatley: | | You said that 2 weeks ago. And here we are |
| Plaintiff: | | I told u I never got a chance to let it healed cause you got a problem with people calling out so I worked |

(Docket Entry No. 29-1, 91; Docket Entry No. 1, at 12).

Plaintiff admitted that Flatley never told him that Flatley would not allow Plaintiff to go to the hospital because of an emergency. (Docket Entry No. 29, at ¶ 28; Docket Entry No. 29-1, at pp. 72-73). Plaintiff never made a request from Flatley for a reasonable accommodation. *Id.* at ¶ 29; Docket Entry No. 30-1, at ¶ 3. Plaintiff testified that he never told anyone with Defendant about the ulcer on his foot except Flatley. *Id.* at ¶ 30.

On June 14, 2017, one of Defendant's employees filed a sexual harassment complaint against Plaintiff with Defendant. *Id.* at ¶ 31. The employee alleged that Plaintiff sexually harassed her on the following three occasions: (1) after Plaintiff mishandled food on multiple occasions, the employee coached Plaintiff, who then told her, "'I'm not going to let any female talk to me like that;'" (2) after the employee revealed that she was bi-sexual to several employees, including Plaintiff, Plaintiff stated that she was an "abomination" and "going to hell for her sexuality;" and (3) that on one occasion, outside of the walk-in cooler, Plaintiff touched the employee on her arm, and while stating, "'Ain't nobody trying to touch you,'" grabbed her arm. *Id*. On June 15, 2017, Defendant began an investigation into the allegations and interviewed several key witnesses who witnessed the harassment. *Id*. at ¶ 32. Defendant also interviewed Plaintiff, who denied the allegations. *Id*. at ¶ 33. However, in his deposition, Plaintiff admitted that he made the statements

10

about that employee's sexuality being an abomination. *Id*. at ¶ 34; Docket Entry No. 29-1, at pp. 66-67.

Pursuant to Defendant's harassment policy, Defendant suspended Plaintiff, pending further investigation of the sexual harassment allegations. *Id*. at ¶¶ 35-36. On Friday, June 16, 2017, Jessica Najar, Defendant's Human Resources Director, called Plaintiff and left him a message requesting Plaintiff attend a follow-up meeting on Monday, June 19, 2017, and to confirm by calling back or

sending a text message. *Id*. at ¶ 39. Plaintiff did not call back or attend the requested meeting; therefore, Plaintiff was terminated on Monday, June 19, 2017. *Id*. at ¶ 40. As grounds for his termination, Najar cites the sexual harassment complaint and Plaintiff's lack of responsiveness and cooperation that violated the Course of Conduct and Employee Handbook. (Docket Entry No. 30-2, at ¶¶ 12-13. Najar attests that Plaintiff never requested an accommodation for an injury or disability, such as requesting reduced hours or taking a leave of absence, and that Plaintiff never submitted any doctor note or medical documentation stating that he was unable to fully perform his job or that he needed an accommodation to perform his job. *Id*. at ¶¶ 15-16.

## IV. STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A factual dispute is

11

material if it "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in h[is] favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 251). "'The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case.'" *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013) (quoting *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex*, 477 U.S. at 322)). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## V. ANALYSIS

The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "Discrimination here means retaliation--that 'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'" *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (*en banc*).

12

Because Plaintiff does not present any direct evidence of retaliation, Plaintiff's retaliation claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), and Plaintiff bears the initial burden to establish a prima facie case of retaliation. *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). The elements of a prima facie case of retaliation under the ADA are that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). "The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Id*. A request for accommodation is a protected act. *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015).

If the plaintiff meets his or her burden, "the defendant has a burden of *production* to articulate a nondiscriminatory reason for its action. If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d at 767 (emphasis in original and citations omitted). To show pretext, "a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *Id*. (emphasis in original).

Before addressing the protected-activity prong of Plaintiff's prima facie case of ADA retaliation, the Magistrate Judge must first explain what a plaintiff must show when alleging as "protected activity" the act of requesting an accommodation. "The employee bears the burden of requesting a reasonable accommodation." *Aldini v. Kroger Co. of Michigan*, 628 F. App'x 347, 350

13

(6th Cir. 2015). Once that request is made, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.' But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered." *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84-85 (6th Cir. 2012) (citation omitted). "As such, the general rule is that when the employee does not propose an accommodation, his 'failure to accommodate' claim must fail." *Aldini*, 628 F. App'x at 351.

Sixth Circuit case law does not establish a "bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation." *Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014). "Although a plaintiff need not use the word 'accommodate' or 'disability,' at a minimum he must 'make it clear from the context that [the request] is being made in order to conform with existing medical restrictions.'" *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016) (citations omitted). "The employer is not required to speculate . . . 'as to the extent of the employee's disability or the employee's need or desire for an accommodation.'" *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 416 (6th Cir. 2017) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). "The employee also must make it clear that the request is being made because of the employee's disability." *Judge*, 592 F. App'x at 407.

Here, Plaintiff has failed to produce sufficient evidence that he engaged in a protected activity. Plaintiff specifically admitted during his deposition testimony that he never asked Flatley or anyone with Defendant to adjust his schedule because of the ulcer on his foot. Plaintiff testified that he would have requested an adjusted schedule if the doctors had said that he could not work,

14

but because the doctors told him that he could work, he continued to work his regular schedule. Plaintiff never made a request from Flatley or anyone else with Defendant for a reasonable accommodation.

Nor does Plaintiff present any evidence of him engaging in any other protected activity under the ADA. Thus, Plaintiff has not established that he engaged in protected activity under the ADA.

Further, Plaintiff fails to present evidence of a causal connection between any alleged request for an accommodation and his termination. To establish a causal connection, a plaintiff must produce "sufficient evidence from which an inference could be drawn that the adverse action would not have been taken" had the plaintiff not engaged in the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). The undisputed facts show that after Plaintiff's discharge from the hospital Flatley attempted to accommodate Plaintiff by telling him that he still had his job and by offering to limit Plaintiff to working one day a week until his foot was better, to which Plaintiff declined.

Moreover, Defendant has established a legitimate, nondiscriminatory reason for terminating Plaintiff. Defendant presented evidence that on June 14, 2017, Najar received a complaint of sexual harassment from an employee concerning Plaintiff. In his deposition, Plaintiff admitted to stating that the employee's homosexuality was an "abomination." Plaintiff did not offer his continued cooperation with Najar's investigation by failing to return Najar's telephone call and by failing to show up for a meeting with Najar, in violation of Defendant's Code of Conduct and the Employee Handbook, which alone constituted grounds for termination. Najar attested that Defendant terminated Plaintiff because of the sexual harassment complaint and his lack of response and cooperation with the investigation. *See McDonald v. UAW-GM Ctr. for Human Res.*, 738 F. App'x

15

848, 855-56 (6th Cir. 2018) (finding plaintiff's retaliation claim failed because plaintiff's insubordination and later admission to the insubordination were such intervening events that were the "but for" cause of her suspension); *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013) ("'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity'" (citing *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012), where the Court held that an employee who complained about harassment and then left without authorization had himself engaged in an intervening event giving his employer a reason to discipline him)); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 396 (6th Cir. 2017) ("Although temporal proximity can demonstrate a causal connection for the purposes of a prima facie case, it alone cannot establish pretext.").

Accordingly, for these reasons, the Magistrate Judge concludes that based upon the undisputed factual record, Plaintiff has failed to meet his burden of presenting sufficient evidence establishing his ADA claim that he was terminated in retaliation for requesting a reasonable accommodation and that this claim therefore should be dismissed.

## VI. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** that Defendant's motion to strike (Docket Entry No. 40) and motion for summary judgment (Docket Entry No. 27) be **GRANTED,** that Defendant's motion to stay (Docket Entry No. 42) be denied as moot, and that this action be **DISMISSED WITH PREJUDICE.**

The parties have fourteen (14) days after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a

16

Case 3:17-cv-01153 Document 44 Filed 12/09/19 Page 16 of 17 PageID #: 416

copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 9th day of December, 2019.

/s/    Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge

17